UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| RANDY RUSSELL YBARRA, | |
| Plaintiff, | |
| v. | CAUSE NO.: 3:24-CV-974-TLS-JEM |
| DAWN BUSS, PAM BANE, DOUGLAS WARDLOW, and VINCENT MCCORMICK, | |
| Defendants. | |

**OPINION AND ORDER**

Randy Russell Ybarra, a prisoner without a lawyer, filed an amended complaint raising claims related to the conditions of his confinement at the Indiana State Prison. ECF No. 4. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up). Nevertheless, under 28 U.S.C. § 1915A, the Court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

The amended complaint says it is suing only four defendants: Dawn Buss, Pam Bane, Douglas Wardlow, and Vincent McCormick. ECF No. 4 at 1, 2. However, because Ybarra wrote "Indiana Dept of Corrections" (IDOC) in the caption, the Clerk of Court listed it as a defendant also. Because Ybarra clearly did not intend to sue the IDOC, it will be dismissed.

The amended complaint seeks monetary damages from the defendants in both their individual and official capacities. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't*

*of State Police*, 491 U.S. 58, 71 (1989). "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Id*. Because the official capacity claims do not state a claim, they will be dismissed.

The amended complaint describes many events without explaining how any of the four individual defendants were involved. There is no general supervisory liability under 42 U.S.C. § 1983. *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). "Only persons who cause or participate in the violations are responsible." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Burks*, 555 F.3d at 596. Because acts and omissions not specifically attributed to one of these four defendants do not state a claim, Ybarra's allegations about such events will not be addressed in this opinion.

The amended complaint mentions many violations of prison policies. "In order to state a claim under [42 U.S.C.] § 1983 a plaintiff must allege: (1) that defendants deprived him of a federal constitutional right; and (2) that the defendants acted under color of state law." *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006). "Essential to any section 1983 action is proof that a defendant violated a plaintiff's federal rights. The statute does not provide a remedy for abuses that do not violate federal law nor does it create substantive rights." *Jones v. Cummings*, 998 F.3d 782, 788 (7th Cir. 2021) (cleaned up). "By definition, federal law, not state law, provides the source of liability for a claim alleging the deprivation of a federal constitutional right." *Sobitan v. Glud*, 589 F.3d 379, 389 (7th Cir. 2009) (citation omitted). Because violations of prison policy do not state a claim, Ybarra's allegations about these alleged violations will not be addressed in this opinion.

The amended complaint alleges Ybarra was transferred from the Westville Correctional Facility to the restrictive housing unit (RHU) at the Indiana State Prison on December 12, 2022. ECF No. 4 at ¶ 2. Conditions in RHU were more restrictive than those in specifically designated general population units. *Id.* ¶ 26. Nevertheless, while Ybarra was there, RHU was used "as a normal housing unit" and inmates were assigned there because there was not space for them in units specifically designated for general population inmates. *Id.* ¶ 8.

The amended complaint argues Ybarra had "a state created liberty interest" that required he receive due process because conditions in RHU were "atypical and significant." *Id.* ¶¶ 4, 5. The Constitution does not create a due process liberty interest in avoiding transfer within a correctional facility or remaining in the general prison population. *See Sandin v. Conner*, 515 U.S. 472 (1995). An inmate is entitled to due process protections only when the more restrictive conditions pose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. "After *Sandin*, it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves in relation to the ordinary incidents of prison life." *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (cleaned up). While Ybarra was in RHU, despite its name and more restrictive conditions, it was being used to house general population inmates and had therefore become the "ordinary incidents of prison life." As such, Ybarra was not entitled to due process because of his placement in RHU. Moreover, inmates do not have a liberty interest in avoiding short-term transfer to segregation for administrative, protective, or investigative purposes, even when they are subjected to harsher conditions as a result. *See, e.g.*, *Townsend v. Fuchs*, 522 F.3d 765, 772 (7th Cir. 2008); *Lekas v. Briley*, 405 F.3d 602, 608–09 (7th Cir. 2005). Only placement

3

in long-term segregation approaching a year or more can implicate a liberty interest, requiring further inquiry into whether the conditions of confinement impose an atypical, significant hardship. *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 698–99 (7th Cir. 2009). The amended complaint alleges Ybarra was in RHU "for over 6 months." ECF No. 4 at ¶ 4. However, the dates he provides (December 12, 2022, to May 12, 2023) show he was only there for five months. *Id*. at 1. Either way, his time in RHU was not "approaching a year or more."

The amended complaint alleges Ybarra was subjected to double jeopardy when he was placed in RHU because of prior misconduct for which he had already been punished. ECF No. 4 at ¶ 7. The Fifth Amendment Double Jeopardy Clause, made applicable to the states through the Fourteenth Amendment, provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." The Clause prohibits retrials following acquittals. *Richardson v. United States*, 468 U.S. 317, 323–24 (1984). It also prohibits "punishing twice, or attempting a second time to punish criminally, for the same offense." *Witte v. United States*, 515 U.S. 389, 395–96 (1995) (cleaned up). Ybarra was not prosecuted twice for the same offense, nor was he *criminally* punished twice for the same offense. He simply had multiple consequences resulting from his conduct in prison. The Double Jeopardy Clause is inapplicable.

The amended complaint alleges Ybarra, and other inmates in RHU, were treated differently than inmates in general population units because they received inferior quality and quantities of clothing and bedding. ECF No. 4 at ¶¶ 11, 13, 20. To assert an Equal Protection claim, a prisoner must allege that he is a member of a protected class and that a prison employee treated him less favorably than other prisoners outside the class who were similarly situated. *Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005). Ybarra argues he and others in RHU were members of "'a suspect class' who are transfer inmates who have received a class A or class B

4

conduct report within 1 year prior to arrival at I.S.P., even though sanctions have already been completed as due process allowed DHB officer to impose." ECF No. 4 at ¶ 29. However, "[p]risoners are not a suspect class; conviction of crime justifies the imposition of many burdens." *Johnson v. Daley*, 339 F.3d 582, 585–86 (7th Cir. 2003). So too for inmates with recent disciplinary violations. There is a rational basis for treating such inmates with a history of disciplinary violations different than inmates with clean disciplinary records.

The amended complaint alleges Ybarra filed a complaint about the temperature in his cell. ECF No. 4 at ¶¶ 17–18. It alleges Major Douglas Wardlow and Lt. Vincent McCormick were involved in responding to that grievance and that they did not solve the problem. *Id*. "[P]rison officials who reject prisoners' grievances do not become liable just because they fail to ensure adequate remedies." *Est. of Miller by Chassie v. Marberry*, 847 F.3d 425, 428 (7th Cir. 2017). "[O]nly persons who cause or participate in the violations are responsible." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). Again, "public employees are responsible for their own misdeeds but not for anyone else's." *Burks*, 555 F.3d at 596.

The amended complaint alleges Lt. McCormick left Ybarra in a cell that "had exposed electrical wires that shocked me at times when attempting to turn on/off light, this caused me to have to leave light on for days or weeks." ECF No. 4 at ¶ 19.

> There is no question that fire and occupational safety are legitimate concerns under the eighth amendment. However, not every deviation from ideally safe conditions constitutes a violation of the constitution. The eighth amendment does not constitutionalize the Indiana Fire Code. Nor does it require complete compliance with the numerous OSHA regulations.

*French v. Owens*, 777 F.2d 1250, 1257 (7th Cir. 1985) (cleaned up). A prisoner is entitled to protection from conditions that "pose an unreasonable risk of serious damage to his future health." *Helling v. McKinney*, 509 U.S. 25, 35 (1993). However,

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Here, it is not plausible to infer that the exposed wires posed an excessive risk to Ybarra because by his "own description, this condition was a minor hazard that was easily avoided." *Morissette v. Peters*, 45 F.3d 1119, 1123 (7th Cir. 1995). Because "the wiring was primarily an unpleasant inconvenience, [he] has no claim under the Eighth Amendment." *Id*.

This amended complaint does not state a claim for which relief can be granted. If Ybarra believes he can state a claim based on (and consistent with) the events described in this amended complaint, he may file a second amended complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file a second amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form, which is available from his law library. He needs to write the words "Second Amended" on the first page above the title "Prisoner Complaint" and send it to the Court after he properly completes the form.

For these reasons, the Court:

(1) DISMISSES Indiana Dept. of Corrections;

(2) DISMISSES the official capacity defendants;

(3) GRANTS Randy Russell Ybarra until **March 24, 2025**, to file a second amended complaint; and

(4) CAUTIONS Randy Russell Ybarra if he does not respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

SO ORDERED on February 24, 2025.

s/ Theresa L. Springmann  
JUDGE THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT